# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ZIVA AND PERSIDA STELKIC,

        Plaintiffs,

        v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE CO.

        Defendant.

Case No. 15-cv-12215
Hon. Mark A. Goldsmith

---

BRIAN J. MILES (P37186)
MILES & MILES, PLC
Attorney for Plaintiffs
67 North Walnut
Mount Clemens, Michigan 48043
(586) 468-7511

CARY R. BERLIN (P64122)
JOHN D. HONEYMAN (P26380)
PATRICK, JOHNSON & MOTT
Attorneys for Allstate
27777 Franklin Road, Suite 1400
Southfield, Michigan 48034
(248) 356-8590

---

## PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Ziva and Persida Stelkic, through undersigned counsel, move this Honorable Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment in this matter for the reason that there exists no genuine issue as to any material fact and Plaintiffs are entitled to Judgment as a matter of law. The underlying basis for this Motion is set forth in the accompanying Memorandum.

In accordance with L.R. 7.1 (a)(1), Plaintiffs' counsel certifies that he communicated <u>in writing</u> with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

LOCAL RULE CERTIFICATION: I, Brian J. Miles, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10 ½ characters per inch (for non-proportional) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

/s/ Brian J. Miles
BRIAN J. MILES (P37186)
MILES & MILES, PLC
Attorneys for Plaintiffs
67 N. Walnut
Mt. Clemens, MI  48043
(586) 468-7511

Dated: April 6, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZIVA AND PERSIDA STELKIC,

        Plaintiffs,

                Case No. 15-cv-12215
   v.               Hon. Mark A. Goldsmith

ALLSTATE PROPERTY AND
CASUALTY INSURANCE CO.

        Defendant.

---

| BRIAN J. MILES (P37186) | CARY R. BERLIN (P64122) |
|---|---|
| MILES & MILES, PLC | JOHN D. HONEYMAN (P26380) |
| Attorney for Plaintiffs | PATRICK, JOHNSON & MOTT |
| 67 North Walnut | Attorneys for Allstate |
| Mount Clemens, Michigan 48043 | 27777 Franklin Road, Suite 1400 |
| (586) 468-7511 | Southfield, Michigan 48034 |
| | (248) 356-8590 |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ............................................................................ii

I.  STATEMENT OF UNCONTESTED MATERIAL FACTS .......................... 1

II.  SUMMARY OF THE ARGUMENT ..................................................... 2

III.  SUMMARY JUDGMENT STANDARD ................................................. 5

IV.  LAW AND ARGUMENT ................................................................... 6

    A.  Burden of Proof ................................................................... 6

    B.  "Sudden and Accidental Direct Physical Loss" ...................... 6

    C.  Mechanical Breakdown Exclusion ......................................... 9

    D.  The "Any Loss that Follows" Exception ................................ 10

    E.  Mechanical Breakdown of the Engine ................................... 14

    F.  The Opinions of Mr. Traige Are Not Admissible Under Rule 702 ...... 17

V.  CONCLUSION ............................................................................. 19

# INDEX OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598,
26 L.Ed.2d 142 (1970)...................................................................5
*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) ... 5
*Feinbloom v. American International Insurance Co.,*
2008 Mich. App. Lexis 836 (April 24, 2008)....................................11, 14
*Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992)............................6
*Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.,*
   857 F.2d 286 (5th Cir. 1988)........................................................12, 13
*Penny Holden v. Connex-Metalna, et al.,*
2000 U.S. Dist. Lexis 18822 (E.D. La., Dec. 20, 2000) ....................................12, 13
*Pioneer State Mutual Insurance Company v. Dells,* 301 Mich App 368 (2013)......6
*Street v. J.C. Bradford and Co.,* 886 F.2d 1472 (6th Cir. 1989)............................5, 6
*Taubert v. Merrell Dow Pharms, Inc.,*
509 U.S. 579, 113 S.Ct. 2786, 120 L.Ed. 2d 469 (1993) ........................................19
*TMW Enterprises, Inc. v Federal Insurance Company,*
619 F.3d 574 (6th Cir. 2010) ........................................................11, 13
*White v. Turfway Park Racing Ass'n., Inc.,* 909 F.2d 941 (6th Cir. 1990)................5

## Court Rules

Rule 702 of the Federal Rules of Evidence....................................................5, 18, 19

Plaintiffs, Ziva and Persida Stelkic, through their attorneys, Miles & Miles, P.L.C., in support of their Motion for Summary Judgment, state as follows:

## I.   STATEMENT OF UNCONTESTED MATERIAL FACTS

In support of their motion, Plaintiffs submit the following statement of uncontested material facts:

1.   Plaintiffs were at all material times the owners of the 1995 63' Sea Ray motor yacht referenced in Plaintiffs' Complaint, bearing Hull Identification Number SERY0143C595 ("the Vessel"); the Vessel was at all material times insured under the terms of Allstate Policy 9 06 545114 01/24 (the "Policy"). [Exhibit A, pp. 19, 20; Exhibit B, pp. 7, 19, 20, 27; Exhibit F].

2.   In June 2014 the Vessel's starboard engine was started by Plaintiff and immediately "over-revved," running out of control at a high rate of speed due to a condition referred to as "diesel engine runaway." [Exhibit A, pp. 83, 84; Exhibit C, pp. 117-123; Exhibit D, pp. 60, 61; Exhibit J, p. 13].

3.   The "diesel engine runaway" was caused by a malfunction in the starboard fuel injector pump (the "Pump") that caused an uncontrolled oversupply of fuel to be pumped to the engine. [Exhibit C, pp. 117-123; Exhibit D, pp. 60, 61; Exhibit E, pp. 55-59; Exhibit J, pp. 21, 22].

4.   The runaway condition caused catastrophic damage to the starboard engine. [Exhibit A, pp. 83, 84; Exhibit C, pp. 117-123; Exhibit D, pp. 60, 61;

Exhibit J, pp. 21, 22].

5.      The damage to the engine was a "sudden and accidental direct physical loss" within the meaning of the Policy. [Exhibit A, pp. 83, 84; Exhibit H, pp. 10, 11].

6.      Allstate denied coverage for Plaintiffs' claim based on the Policy's "mechanical breakdown" exclusion and the opinion of its expert, James Traige ("Traige") concluding that the cause of the engine damage was most consistent with mechanical breakdown of the Pump. [Exhibit D, pp. 60, 61; Exhibit G; Exhibit H, pp. 12-15].

7.      The damaged engine was manufactured by "MTU," a Mercedes company; the malfunctioning Pump was manufactured by Bosch, a company separate and distinct from MTU and Mercedes.  [Exhibit C, pp. 11, 40; Exhibit E pp. 29, 30; Exhibit I].

8.      The reasonable cost of repairing the engine damage, exclusive of the cost of repairing the Pump, is $95,496.94. [Exhibit D, pp. 63, 64; Exhibit J, pp. 22, 23].

## II.   SUMMARY OF THE ARGUMENT

In June 2014, after refueling the Vessel at a local gas dock on Lake St. Clair, Plaintiff started the Vessel's starboard engine which immediately "over-revved." [Exhibit A, pp. 83, 84].  The engine ran out of control at a very high rate of speed,

causing substantial damage to the engine. [Exhibit A, pp. 83, 84; Exhibit C, pp. 117-123].  Such catastrophic over-revving of a diesel engine is a condition referred to in the industry as "diesel engine runaway." [Exhibit C, pp. 117-122; Exhibit, D pp. 61; Exhibit E, pp. 55-59; Exhibit J, pp. 20, 21]. In this case it was caused by a malfunction of the Pump, resulting in an uncontrolled oversupply of fuel being fed to the engine. [Exhibit D, pp. 60, 61; Exhibit C, pp. 117-123; Exhibit J, pp. 20, 21]. The Pump malfunction was caused by a contaminant, probably a small piece of metal, scoring one of the Pump's plungers, causing the Pump to be stuck in the "open" position. [Exhibit C, pp. 128-133; Exhibit D, pp. 60, 61; Exhibit E, pp. 59-61].

In his report, Allstate's expert concludes that the metal fragment reportedly causing the Pump's plunger to stick originated from *within* the Pump as a result of an internal "mechanical breakdown." [Exhibit D, pp. 60, 61].[1] Based on that conclusion, Allstate denied coverage of Plaintiffs' claim citing an exclusion from coverage for damage caused by "mechanical breakdown." [Exhibit G; Exhibit H, pp. 12-15]. Allstate's reliance on the referenced exclusion is misplaced.  That exclusion contains an important *exception*:

> Losses we do not cover: We do not cover loss to the property described and Property We Cover in coverage TT, Your Property

---

[1] For purposes of this motion *only*, Plaintiffs assume that Allstate is correct in its assertion that the Pump malfunction was caused by a metal fragment originating from an internal "mechanical breakdown" of the Pump.

resulting in any manner from:

\*\*\*

3. Structural or electrical or mechanical breakdown, or overheating. *Any loss that follows is covered unless specifically excluded.*

[Exhibit G].

The "mechanical breakdown" relied upon by Allstate to deny coverage involved a breakdown of the Pump, not the engine. [Exhibit D, pp. 60, 61; Exhibit H, pp. 12-15]. As will be discussed in detail below, the engine damage resulting from the Pump's malfunction falls within the "ensuing loss" or "any loss that follows" exception to the mechanical breakdown exclusion and is therefore outside its scope. Thus, even accepting the opinion of Allstate's expert as true, the engine damage is a covered loss under the Policy.

Any attempt by Allstate to argue that the loss was caused by mechanical breakdown of the engine and not the Pump must fail, as there is no evidence to support such a claim. Traige expressly stated that the Pump malfunction was the most consistent cause of the damage. [Exhibit D, pp. 60, 61]. He admitted that because he failed to inspect the turbocharger seals, and due to the severe damage sustained by the rest of the engine, he was unable to conclude that the "runaway" condition that caused the engine damage had anything to do with a mechanical breakdown within the engine itself. [Exhibit J, pp. 14, 15]. Allstate relied solely on the opinion of Traige to support its denial of coverage. [Exhibit H, pp. 12-15]. Allstate has absolutely no evidence to support a denial of coverage on the basis of

4

mechanical breakdown of the engine.

Alternatively, Plaintiffs submit that Allstate cannot rely on any opinion of Traige for the reason that he does not qualify as an expert within the meaning of FRE 702 and his opinions are therefore inadmissible.  Traige admitted in his deposition that he had only a "basic understanding" of diesel engines and that he did not hold himself out as an expert on the subject.  [Exhibit J, pp. 5, 6]. Without the opinion testimony of Traige, Allstate cannot meet its burden of proving the application of the mechanical breakdown exclusion upon which it relied in denying coverage of Plaintiffs' claim.

## III.  SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-moving party in determining whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n., Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  Summary judgment should be granted whenever the non-moving party fails to establish the existence of an element essential to that party's claim and of which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).  The trial court is not obliged to search the record to establish the absence of a genuine issue of material fact. *Street v. J.C. Bradford and Co.*, 886

5

F.2d 1472, 1479-80 (6th Cir. 1989). To avoid summary judgment, the non-moving party must identify specific facts in the record, amounting to more than a scintilla of evidence, establishing the existence of a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).

## IV. LAW AND ARGUMENT

### A. Burden of Proof

It is well established in Michigan that the burden of proof lies with the insured to establish that a loss falls within the description of "what is covered" in a policy of insurance. *Pioneer State Mutual Insurance Company v. Dells*, 301 Mich. App. 368, 378 (2013). In this case, the Policy provides coverage for damage to property resulting from "sudden and accidental direct physical loss." [Exhibit B, pp. 19, 20; Exhibit G]. "While the burden of proving initial coverage is on the insured, it is incumbent on the insurer to prove that an exclusion from coverage is applicable." *Id*. Exclusions from coverage are strictly construed in favor of the insured and in favor of coverage. *Id*.

### B. "Sudden and Accidental Direct Physical Loss"

Plaintiffs have met their burden of proving the damage to the Vessel's engine is a "sudden and accidental direct physical loss" and therefore a covered loss under the Policy. The Policy provides coverage for property damage, as follows:

6

Losses We Cover: We will pay for **sudden and accidental direct physical loss** to the property described in Property We Cover in Coverage TT, Your Property, except as limited or excluded in this policy."

[Exhibit B, p. 20].

The "Property We Cover" definition in "Coverage TT" includes the Vessel and its engines. [Exhibit B, p. 19]. The testimony of Ziva Stelkic describing the "diesel engine runaway" occurrence and the consequent damage to the engine provides undisputed evidence that the loss was "sudden" and "accidental:"

Q: *So what happened when you start it up?*

A: *Well, I went to start and two separate buttons, as we discussed before, port engine started fine, starboard engine hesitate, so I second or two took my finger off the rocket switch, tried again. At the second time the engine just suddenly excessively explodingly revved up. Horror. I tried to kill it. Stop switch didn't work. The emergency stop switch didn't work, and the engine was stirring itself up in meantime, which was extremely sad to hear. I proceeded to go in the bilge. To get in the bilge you have to remove cockpit cover, which took a little time, and you had to lift the cover.*

Q: *And the engine is running all this time?*

A: *Revving and tearing itself apart. Extremely extremely extremely high RPM. By the time I got in the bilge and reach to another kill switch on top of the engine, the engine just stop.*

[Exhibit A, pp. 83, 84]. It cannot be disputed that "sudden and accidental" and a "direct physical loss."

Allstate's November 6, 2014 letter setting forth the basis for denying

7

coverage does not purport to do so because the loss was not a "sudden and accidental direct physical loss" within the meaning of the Policy. [Exhibit G]. In fact, the claims adjuster responsible for determining coverage, and who authored the letter denying coverage, testified that failure to meet the threshold of "sudden, accidental and direct physical loss to the property" was **not** one of the reasons that coverage was denied in this case:

> Q: *I guess my question is, were you denying coverage in part because the claim did not meet the threshold of being a sudden and accidental direct physical loss?*
>
> A: *That was not the reason for the denial.*

[Exhibit H, p. 11].[2]

Plaintiffs have met the threshold of establishing coverage under the Policy and the burden of proof therefore shifted to Allstate to prove the unequivocal

---

[2] The terms "sudden and accidental" were defined by the Michigan Supreme Court in *UpJohn Co. v. New Hampshire Ins. Co.*, 438 Mich 197 (1991):

> "We conclude that when considered in its plain and easily understood sense, 'sudden' is defined with a 'temporal element that joins together conceptually the immediate and the unexpected.'" "The common, everyday understanding of the term 'sudden' is 'happening, coming, made or done quickly, without warning or unexpectantly; abrupt ---."

438 Mich at 207. The term "accident" was defined as follows:

> "'Accident' means '[o]ccurring unexpectedly and unintentionally; by chance.'"

*Id.*, at 207, 208.

application of an exclusion from coverage.  That burden has not been met.

### C.    The Mechanical Breakdown Exclusion

Allstate denied coverage based upon the "mechanical breakdown" exclusion in the Policy.  [Exhibit G; Exhibit H, pp. 12-15].  It did so in reliance on the opinion of its expert, Traige that the loss at issue is most consistent with having been caused by a "mechanical breakdown" of the *Pump*. [Exhibit D, pp. 60, 61; Exhibit H, pp. 12-15].  Traige concluded that because the scored plunger caused that Pump to stick in the "open" position, the Pump forced an unlimited and uncontrolled supply of fuel to the engine, causing the runaway condition. [Exhibit C, pp. 117-123; Exhibit D, pp. 60, 61; Exhibit J, pp. 21-22]. The oversupply of fuel caused the engine to run out of control at an extremely high rate of speed, beyond the engine's design specifications, ultimately causing the engine to destroy itself. [Exhibit C, pp. 117-123; Exhibit D, pp. 60, 61; Exhibit H, pp. 12-15; Exhibit J, pp. 20-21].

Plaintiffs submit that accepting the foregoing conclusion as true, the mechanical breakdown exclusion does not apply to damage to the engine.  The damage to the *Pump* would fall within the Policy's mechanical breakdown exclusion; however, the *engine* damage falls with within the "any loss that follows" *exception* to the mechanical breakdown exclusion and is outside the scope of the exclusion:

> Losses we do not cover: We do not cover loss to the property
> described and Property We Cover in coverage TT, Your Property
> resulting in any manner from:
>
> 4.  Structural or electrical or mechanical breakdown, or overheating.
>     *Any loss that follows is covered unless specifically excluded.*

[Exhibit B, p. 27; Exhibit G].

Allstate does not identify any other basis upon which the engine damage is "specifically excluded."

### D.   The "Any Loss that Follows" Exception

The "any loss that follows" exception to the mechanical breakdown exclusion is frequently referred to as an "ensuing loss" clause. The meaning of the "any loss that follows" exception to the coverage exclusion was described by the Allstate adjuster responsible for determining coverage in this case as being self-explanatory: "It is what it is stated." [Exhibit H, p. 16]. While Allstate's adjuster declined to provide examples of the clause's application [Exhibit H, p. 16], the case law offers several relevant illustrations. The ensuing loss exception was discussed in *Feinbloom v. American International Insurance Co.*, 2008 Mich. App. Lexis 836 (April 24, 2008):

> The verb "ensue" is defined as "to follow in order; come
> afterward, esp. in immediate succession[;] to follow as a
> consequence." *Random House Webster's College Dictionary*
> (1997).

2008 Mich. App. Lexis 836, pp. 7, 8.

At issue in *Feinbloom* was a policy exclusion for damage resulting from "rust, mold, rot, gradual deterioration or warping."   The exclusion had an exception for damages resulting from any "ensuing loss."   While it denied the claim for mold damage based upon the mold exclusion, the court gave the following example of an "ensuing loss" that would be an exception to the coverage exclusion at issue:

> In context, an "ensuing covered loss" is a covered loss that followed as a consequence of the listed excluded losses: "rust, mold, rot, gradual deterioration or warping." The insurance policy covers "all risks of physical loss or damage to your house, contents or other permanent structures unless an exclusion applies." Therefore, for example, if a fire alarm malfunctions due to rust damage, and, as a result, sprinklers are tripped causing water damage, the water damage would be covered as a consequence of the excluded rust damage (absent, of course, the operation of another exclusion) but the rusty fire alarm would not be covered.

*Id.*, p. 8.

*TMW Enterprises, Inc. v Federal Insurance Company*, 619 F.3d 574, 579 (6th Cir. 2010) provides a similar example of an "ensuing loss" exception to an exclusion from coverage:

> Among the definitions of "ensuing" is the meaning that something "follow[s] in chronological succession." *Webster's 3[rd] New International Dictionary*, 756 (2002). The clause establishes that chronologically later-in-time damages "caused" by "a peril not otherwise excluded" remain covered. If, say, the water leak in this case had shorted an electrical socket and started a fire, any fire damage would be covered in light of the "ensuing loss" clause.

11

619 F.3d at 579.

In *Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*, 857 F.2d 286 (5th Cir. 1988), the court considered an ensuing loss clause that, like the clause at issue in the instant case, arose in the context of a "mechanical breakdown" exclusion. The case involved an incident in which a cable on a ship loader snapped, causing a heavy shuttle to crash into it, resulting in extensive damage to the ship loader. At issue was whether the "mechanical breakdown" exclusion applied to the ship loader damage or whether the "ensuing loss" clause removed such damage from the exclusion. The court held that while the mechanical breakdown exclusion applied to the cost of replacing the belt that snapped, it did not apply to the ensuing loss to the ship loader which was an exception to the exclusion.

In *Penny Holden v. Connex-Metalna, et al.*, 2000 U.S. Dist. Lexis 18822 (E.D. La., Dec. 20, 2000) a crane was damaged when, due to imbalance resulting from faulty design, it cart-wheeled into the Mississippi River. The issue before the court was application of the "ensuing loss" exception to the various coverage exclusions being asserted by the insurance company. After an extensive analysis of the meaning of the term "ensuing loss," the court determined that while the cost of rebalancing the crane was excluded from coverage, the catastrophic loss of the crane caused by the imbalance was not:

12

> *The exclusions at issue here are designed to ensure that the property insurers do not become warrantors of the crane's quality.* As such, the property policies do not cover worn or broken parts, pay for repairs when a mechanical system or process breaks down, or fix a design problem.
>
> ***
>
> Thus had it remained standing, any of the exclusions, if applicable, would have barred from coverage any cost to rebalance or redesign the crane. However, in this case, the unbalance triggered a series of ensuing events that lead to the complete destruction of the crane and other property. The destruction of the crane as a whole is not co-extensive with a defect that put the crane out of balance. Therefore, the relevant exclusion is limited to the cost to rebalance the crane (which is not sought in this case). All damages caused by the falling crane, including the total loss of the crane itself are excepted under the "ensuing loss" proviso.

2000 U.S. Dist. Lexis 18822 at pp. 26, 27. (Emphasis added).

In the case at bar, Allstate denied coverage on the basis that the damage to the engine was caused by the mechanical breakdown of the Pump. [Exhibit D, pp. 60, 61; Exhibit H, pp. 12-15]. Plaintiffs agree that Allstate should not be responsible for the repair or replacement of a worn or broken Pump. However, while the mechanical breakdown exclusion in the Policy applies to the damage to the Pump itself, the ensuing engine damage is a "following loss" similar to the water damage in *Feinbloom;* the ship loader damage in *Lake Charles Harbor;* the cart-wheeled crane damage in *Penny Holden;* and, the fire damage in *TMW Enterprises, Inc.* In other words, the engine damage constitutes a "loss that follows" the mechanical

13

breakdown of the Pump, and therefore falls directly within the "ensuing loss" exception to the exclusion. The engine did not wear out or breakdown due to poor maintenance or faulty design; it suffered a sudden and accidental catastrophic loss. The engine damage is not within the scope of the mechanical breakdown exclusion. Since there is no other exclusion that applies to the engine damage, there is coverage under the Policy for the cost of repairing the engine.

### E. Mechanical Breakdown of the Engine

Traige concluded in his report that the most consistent cause of the damage to the engine was a malfunction from within the Pump. [Exhibit D, pp. 60, 61]. While his report identified other potential causes of the "runaway" condition, such as worn oil seals in a turbo charger, over-filling the crank case with oil, excessive piston wear, etc., he cited no evidence to support a finding that *any* of those other potential causes was actually a contributing cause. To the extent Allstate attempts to argue that the engine's mechanical breakdown caused the damage at issue, the evidence simply does not support such a finding.

When asked at his deposition to identify the "world of possible causes" of a diesel engine run away, Traige answered:

Q:  *"What is the world of possible causes of a diesel engine runaway situation that you would have looked for?*

A:  *In order for a diesel engine runaway to occur you either have to have*

14

> *a bad injection pump or you have to have a outside source of fuel*
> *which would be either leaking rings, turbochargers leaking oil,*
> *crankcase ventilation, something inside the bilge of the boat which*
> *was a gaseous nature that could be drawn into the intake which, you*
> *know, that wasn't the case in this situation.*

Q:   *Okay. So you would have checked for all of those things?*

A:   *We looked in the boat and we didn't find anything that would have*
     *caused an excess, you know, fuel source inside the actual engine*
     *compartment."*

[Exhibit J, pp. 13, 14].

When asked his opinion as to what he believes caused the runaway situation,

Traige made it clear that he could not identify *any* mechanical breakdown in the

engine that would have contributed to the runaway situation:

Q:   *"Okay. But you didn't conclude that it was, the runaway was*
     *caused by the rings or the turbochargers or anything else*
     *relating to the actual engine did you?*

A:   *No, we could only see this as it was apart and, again, the motor*
     *wasn't able to be tested afterwards so you couldn't do a*
     *compression test. I mean, the boat, the motor was already*
     *destroyed. I mean, it was, you know, trying to figure out what*
     *caused the destruction so, I mean."*

[Exhibit J, pp. 14, 15].

Traige therefore admitted that, due to the nature and extent of the engine

damage he could neither confirm nor rule out mechanical breakdown of the engine

as a cause of the runaway condition.  He further admitted that he could have

requested that the turbocharger be disassembled and the seals checked in order to

15

assess whether the turbocharger was a cause of the runaway condition, but failed to do so:

> Q:    *"Okay. But since you didn't see the seals of the turbocharger you're not in a position today to say whether the turbocharger, in fact, had anything to do with the runaway condition; isn't that true?*
>
> A:    *I put down that it was a possibility.*
>
> Q:    *Right, but because you didn't see the turbocharger seals you can't say whether it, in fact, was a cause.*
>
> A:    *No."*

[Exhibit J, pp. 20, 21].

Nor can Allstate claim that the Pump's mechanical breakdown caused a separate mechanical breakdown within the engine itself. The damage to the engine resulted from the oversupply of fuel causing the engine to run at extreme RPM's, beyond its design specifications. [Exhibit C, pp. 117-123; Exhibit J, pp. 20-22]. As explained by Traige, a perfectly healthy engine, when subjected to runaway caused by a malfunctioning fuel pump may destroy itself:

> Q:    *So if you have a fuel injection pump that is locked in the open position the amount of fuel running through the engine eventually is going to destroy the diesel engine?*
>
> A:    *It – r.p.m.'s of the engine are designed to run within a certain parameter, when you start to exceed the r.p.m. parameter then you're going to start having valves contacting the pistons, the lifters, all the push rods, everything is going to start becoming loose and not have a proper resistance on them so that's when the damage starts occurring. Basically you're floating the*

16

> *valves and the lifters and it's all making contact inside the engine where it shouldn't normally.*

Q:   *So a healthy engine is ultimately going to destroy itself in a given situation where there's a runaway due to the fuel pump being malfunctioning?*

A:   *Yes, possibly. It, a lot depends, again, on the age and condition of the engine prior to it.*

Q:   *Okay. Was there anything about the age and condition of this engine that you feel was a contributing factor to the damage caused to the engine itself?*

A:   *Nothing specific. I mean, for the vintage of the engine it was in fair condition I thought. Nothing unusual.*

[Exhibit J, pp. 21-22]. Plaintiffs' expert offered a similar explanation. [Exhibit C, pp. 117-123]. Essentially, the malfunction in the fuel supply forces the engine to operate at speeds that exceed its specifications, causing moving parts that are not meant to touch, to make contact, thereby causing catastrophic engine damage. The destruction of the engine parts was not the *cause* of internal mechanical breakdown; rather, it was the *effect* of the Pump's internal mechanical breakdown. To the extent Allstate attempts to argue that the "mechanical breakdown" that brought about the damage was a breakdown of the *engine*, the evidence simply does not support such a finding.

**F.   The Opinions of Mr. Traige Are Not Admissible Under Rule 702**

Alternatively, Plaintiffs submit that Allstate is precluded from relying on *any* opinion of Traige to support its denial of coverage for the reason that he

17

cannot qualify as an expert in the area of diesel engines within the meaning FRE 702. When asked to describe his background and experience with diesel engines, Traige stated that he had reviewed some manuals, though he could not identify which ones. [Exhibit J, pp. 5, 6]. He admitted that he never worked on diesel engines as a practical technician. [Exhibit J, pp. 5, 6]. He has no licenses or certifications with respect to diesel engines. [Exhibit J, pp. 5, 6]. When asked whether he held himself out as an expert on diesel engines, he stated that he did not:

> Q:   *Do you hold yourself out as an expert on diesel engines?*
>
> A:   *I have a very basic understanding of how they operate. As far as 100% knowledge, no.*

[Exhibit J, p. 6].

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. To qualify as an expert and to testify in the form of an opinion the following criteria must be met:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial court acts as a gatekeeper to insure that "any and all scientific testimony or evidence submitted is not only relevant, but reliable." *Taubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 120 L.Ed. 2d 469 (1993).    A witness who admits to having only a "basic understanding" of a subject matter, and conceding that he does not hold himself out as an expert in that area, *prima facie* fails to qualify under Rule 702 to offer expert opinion testimony. His opinions simply are not reliable. The reliability of Traige's opinions is further called into question by the fact that a majority of the "conclusions" contained in his report setting forth a description of the "diesel engine runaway" phenomenon appear to be taken nearly verbatim from *Wikipedia's* website which is not an accepted scientific source. [Exhibit D, pp. 60, 61; Exhibit K]. Plaintiffs respectfully submit in the alternative that Traige's opinions are inadmissible and Allstate's reliance on them as a basis for excluding Plaintiffs' claim from coverage is unfounded.

## IV.  CONCLUSION

Based on the foregoing Plaintiffs respectfully request that judgment be entered in their favor.  The undisputed amount of damages (excluding the cost of repairing the Pump) is $95,496.95.  Plaintiffs respectfully request that judgment in that amount be entered in their favor, plus interest, costs and attorney fees so wrongfully incurred.

19

Respectfully submitted,

/s/ Brian J. Miles
BRIAN J. MILES (P37186)
MILES & MILES, PLC
Attorneys for Plaintiffs
67 N. Walnut
Mt. Clemens, MI  48043
Dated:   April 6, 2016                  (586) 468-7511

## PROOF OF SERVICE

I, Brian Miles, certify that on April 6, 2016, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/  Brian Miles
Brian Miles
MILES & MILES, PLC
67 N. Walnut
Mt. Clemens, MI 48043
(586) 468-7511
rosanne@dmmplc.com